UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:19cr3(JBA) |
| v. | : | |
| WILLIE PENN | : | November 12, 2019 |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States, and by through its undersigned representatives, and hereby respectfully submits this memorandum in anticipation of the sentencing of defendant WILLIE PENN, presently scheduled for November 19, 2019.

### I.     FACTUAL BACKGROUND

#### A.  Procedural History

On January 2, 2019, PENN pled guilty to a single-count information charging him with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   *See* PSR at ¶ 1; Doc. No. 34 (Plea Agreement).   On September 3, 2019, following the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), the defendant pled guilty to a superseding information which charged him with the same offense—confirming that he was aware that he had previously been convicted of a crime punishable by a term of imprisonment for more than one year.   *See* PSR at ¶ 6; Doc. No. 60 (Plea Agreement).

#### B.  Defendant's Conduct

The parties have provided the U.S. Probation Officer with versions of offense conduct that differ in certain areas.   *See* PSR at ¶¶ 9-11; 17-19.   Most specifically, PENN challenges the

1

Confidential Source's ("CS's") statements to law enforcement about negotiating a price (and the idea that he received a benefit). *See* PSR at ¶ 18. As the Court is aware, the CS is now deceased; what the CS told to law enforcement about the price negotiation and that PENN had a gun for sale is not independently verifiable, as those communications between the CS and PENN were not recorded.

The undisputed facts appear to be as follows: Prior to March 28, 2016, the CS and PENN communicated about a gun transaction. *See* PSR at ¶ 18 (the precise substance of the communication differing in what PENN asserts and what the CS told law enforcement). On March 28, 2016, the CS purchased the ROMARM/Cugir, model SAR-1, 7.62 caliber assault rifle bearing serial number S1-59609-2002 (which had previously traveled in interstate and/or foreign commerce), using ATF funds, through a deal for which PENN served as the middle-man. *See* Doc. No. 60 (Plea Agreement) at 11. PENN arranged for the CS to meet him at an address in New Haven, and PENN brought the firearm into the residence. *See* Doc. No. 60, at 11. PENN provided the aforementioned firearm to the CS along with an unloaded rifle magazine. *See* Doc. No. 60, at 11. The CS provided PENN with the ATF funds. *See* Doc. No. 60, at 11. PENN had previously been convicted of felony offenses and was aware that he had been convicted of offenses punishable by imprisonment for more than one year. As such, PENN as not authorized to possess a firearm. *See* Doc. No. 60, at 11; PSR at ¶ 13.

It is also undisputed that over two years later, on August 13, 2018, special agents with the Bureau of Alcohol, Firearms and Explosives ("ATF") approached PENN regarding the sale of the ROMARM/Cugir firearm to the CS. PENN admitted to serving as a middle-man and that he handed the firearm and magazine to the CS. *See* PSR at ¶¶ 12; 20.

2

## II.    DISCUSSION OF SENTENCING CONSIDERATIONS

### A.  Statutory Maximum Sentence

The Government agrees with the statutory maximum sentences set forth in the PSR.   The offense carries a term of imprisonment for up to 10 years; a period of supervised release of up to 3 years; a fine of up to $250,000; and a $100 special assessment.   *See* PSR at ¶¶ 79, 82, 86, 87.

### B.  United States Sentencing Guidelines

The Government agrees with the Guidelines computations that appear in the PSR and in the parties' plea agreement.

#### 1.  *Offense Level*

##### a.  Base Offense Level

The Government agrees with the U.S. Probation Officer that pursuant to U.S.S.G. § 2K2.1(a)(4)(B), because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, the base offense level is 20.   *See* PSR at ¶ 23.

##### b.  Role Adjustment[1]

The defendant argues that he should receive a two-level role reduction pursuant to U.S.S.G. § 3B1.2.   *See* Def. Memo. at 11-14.   The defendant must show by a preponderance that he is "'substantially less culpable than the average participant' in the crime of conviction." *United States v. Duarte*, 365 Fed. Appx. 307, 308 (2d Cir. 2010) (unpublished) (citing U.S.S.G. § 3B1.2(b), Application Note 3(A)).   An assessment of the potential applicability of this section requires a fact-based determination including, but not limited to, the factors set forth in Application Note 3(C) to U.S.S.G. § 3B1.2.

---

[1] The Government addresses the defendant's "minor role" argument in this section, and his arguments for a departure or variance due to age or family circumstances with the discussion of 18 U.S.C. § 3553(a) factors.

As noted above, the parties' versions of offense conduct differ in certain respects. Assuming *arguendo* that PENN's version is correct—that he served as a middle-man at the CS's request, but he did not benefit and did not negotiate with the CS (*see* PSR at ¶ 18)—the defendant is still not a minor participant.   It is often not known how long a defendant charged with possession of a firearm by a felon has been in possession of a firearm.   The fact that PENN may have possessed the gun for a period of minutes does not negate the fact that he possessed it unlawfully in an illegal firearm transaction.   That brevity does not show that he was "substantially less culpable than the average participant."   Based on his role as the middle-man, PENN knew both the seller and ultimate recipient of the firearm—as he would have interfaced with both.   By his own admission, PENN picked up the firearm and delivered it to the CS (himself a felon), who provided money to PENN in exchange for the firearm.   *See* PSR at ¶ 18. Indeed, given PENN's characterization of the CS's behavior—"living a life he wasn't supposed to," "out robbing and stealing" (Exhibit A to Def. Memo)—PENN was undoubtedly aware that CS was a felon; providing a firearm to a felon is a separate federal offense.[2]   *See* 18 U.S.C. § 922(d)(1) (unlawful for person to sell or otherwise dispose of any firearm to any person knowing or having reasonable cause to believe that the person has been convicted of a crime punishable by imprisonment for a term exceeding one year).   As such, PENN had a clear understanding of "the scope and structure of the criminal activity."   Application Note 3(A)(i). The degree to which he "participated in planning or organizing the criminal activity" is not as clear with respect to the gun transaction; however, the CS and PENN communicated prior to the

---

[2] During an interview with ATF in August 2018, prior to his arrest in this case, PENN admitted that he knew the CS was a convicted felon, but later in the interview when asked if he knew the CS was a convicted felon, stated "not really."   *See* Exhibit A (filed separately, under seal).

meeting (*see* PSR at ¶ 18), and PENN arranged for the meeting with the CS to occur, wherein PENN provided the firearm.   *See* Doc. No. 60, at 11.   It also stands to reason that PENN would have communicated with the seller in order to arrange to meet to obtain the firearm; PENN picked up the firearm from the seller; and PENN afterwards delivered the funds to the seller. *See* PSR at ¶ 18.   PENN, as the middle-man, was clearly aware that he, as a felon, would possess the firearm—albeit for a short period of time.   His "decision-making authority" or influence over the "decision-making authority" is not clear except to say that PENN served as an integral link in the gun transaction.   *See* Application Note 3A(iii).   As such, it can be said that absent PENN's participation, the gun transaction might well not have taken place (a fact that is not dispositive under Application Note 3(A)).   Based on PENN's version of the facts, PENN's willingness to participate undoubtedly influenced the decision of the seller to procure the firearm.   *See* PSR at ¶ 18.   PENN's participation in the offense was as a middle-man.   He picked up the firearm and met with the CS.   He provided the CS with the firearm and extended magazine.   He collected funds from the CS to deliver to the supplier/seller.   *See* PSR at ¶¶ 12, 18.   All of these facts evidence the defendant's integral and intimate participation in the criminal activity.   The last factor enumerated in Application Note 3(A), "the degree to which the defendant stood to benefit," may cut the other way—as PENN claims that he received no pecuniary benefit.   *See* PSR at ¶ 18.

In *United States v. Torres*, 425 Fed. Appx. 40, *41 (2d Cir. June 22, 2011) (unpublished summary order), the defendant, who was convicted of possession of a firearm by a felon, argued that he should receive a minor-role adjustment because he possessed a firearm "only briefly, in the course of acting as an intermediary in the sale of the firearm to an undercover agent."   The

Second Circuit affirmed the district court's denial of the adjustment, noting that the district court had found the defendant to be "more than just a possessor" and "more even than just a 'delivery person,'" as he set up the transaction, "was 'intricately involved' in the sale transaction," "act[ed] as a 'broker' and thereby g[ave] 'comfort' to both the gun seller and the gun buyer that in 'a couple of trips and a couple of phone calls' he could finalize their illicit exchange . . . ." *Id.*   To be clear, the Second Circuit did not opine as to whether any of those factors were necessary or dispositive.   While the facts in this case—assuming *arguendo* PENN's version— are not identical to those in *Torres*, like the defendant in *Torres*, PENN gave "comfort to both the gun seller and the gun buyer . . . ."   *Id.*   In *United States v. Mena*, 342 Fed. Appx. 656, *659 (2d Cir. July 29, 2009) (unpublished summary order), where the defendant was convicted of a firearms trafficking charge, 18 U.S.C. § 922(a)(1)(A), and conspiring to engage in the business of unlawfully dealing in firearms, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), the Second Circuit found no clear error where the district court denied a minor role enhancement where "[the defendant's] role as a courier may have been minor relative to the role of his co-conspirators, it nonetheless may have been 'importan[t] . . . to the success of the venture' and may not be minor 'as compared to the average participant in such a crime.'"   *Id.* at *659 (citation omitted).

Accordingly, where the defendant, who had previously been convicted of felony offenses, served as a middle-man, directly facilitating a firearm transaction with the CS, a known felon, the defendant was not a "minor participant" in the offense, possession of a firearm by a felon. His requested adjustment should be denied.

6

c.  Acceptance of Responsibility

Three levels are subtracted for acceptance of responsibility pursuant to U.S.S.G.

§ 3E1.1(a) and (b).  *See* PSR at ¶¶ 30, 31.   The Government anticipates making an oral motion

for the third acceptance point pursuant to U.S.S.G. § 3E1.1(b) at sentencing.

d.  Total Offense Level

The resulting total offense level is 17.  *See* PSR at ¶ 32.

2.  *Criminal History Category*

The Government agrees with the U.S. Probation Officer's assessment that the defendant

has no criminal history points due to the age of his prior convictions.  *See* PSR at ¶¶ 36, 37, 38,

39.   As such, the defendant's Criminal History Category is I.  *See* PSR at ¶ 40.

3.  *Guidelines Range*

With an offense level of 17 and a Criminal History Category of I, the Guidelines ranges

are 24 to 30 months of imprisonment; a period of supervised release of between 1 and 3 years;

and a fine range of $10,000 to $95,000.  *See* PSR at ¶¶ 80, 83, 88.

**C.  18 U.S.C. § 3553(a) Factors**

Included below is a discussion of certain sentencing factors under 18 U.S.C. § 3553(a)

for the Court's consideration.

1.  *Nature and Circumstances of the Offense*

The defendant served as a middle-man in procuring an AK-47-style semiautomatic

firearm with an extended magazine for a Government source.   Doc. No. 60, at 11.   Irrespective

of whether the defendant received any personal benefit from the sale, he was a convicted felon,

and as such, was not authorized to conduct such a transaction.   The defendant, as a middle-man,

7

attempted to get a gun to the CS—who purportedly represented to PENN that he wanted it due to

danger to himself.   That the CS faced danger on the street is not entirely surprising given his

history.   As the defendant points out, the CS had a significant criminal history.   *See* Ex. J to

Def. Memo.   And as PENN acknowledges, the decision to get a gun for the CS could have "sent

. . . the message that gun violence was acceptable."   Def. Memo. at 20-21.   The defendant knew

that the CS "was living a life he wasn't supposed to.   He was out robbing and stealing."

Exhibit A to Def. Memo.   Simply put, knowing that the CS was committing acts of violence—

like robbing—the defendant agreed to serve as a middle-man for a gun transaction with the goal

being to put a semi-automatic handgun with an extended magazine in those hands.   The fact

"that the gun didn't end up in the community" (Def. Memo at 19) is not a mitigating factor.   The

goal—which PENN shared as a middle-man—was for that very thing to occur.   Thankfully, it

did not.

While PENN refers to the "one-time nature of the offense" (Def. Memo at 19) and may

not have physically possessed other firearms, he did facilitate other firearms transactions in the

past.   *See* Exhibit A (filed under seal); PSR at ¶ 12.   PENN, someone who witnessed and

experienced gun violence himself, was uniquely aware of the danger of putting guns on the

street.

### 2.   *History and Characteristics of the Defendant*

While the defendant falls within Criminal History Category I, he has a criminal history—

albeit a dated one.   PENN has one prior offense that involved a firearm.   In 1992, he was

convicted of threatening and reckless endangerment following an incident wherein he admitted

to have pointed a gun at another individual in order to scare him.   *See* PSR at ¶ 36.   In 1995,

PENN was convicted of participation in a federal drug conspiracy—a conspiracy involving, for PENN, at least 100 but less than 200 grams of cocaine.   *See* PSR at ¶ 37.   In that case, PENN received a 41-month sentence.   *See* PSR at ¶ 37.   PENN was also convicted in 1999 (for a 1994 offense) of a drug sales charge.   *See* PSR at ¶ 38.   PENN did not amass any further criminal convictions between 1999 and this case, which occurred over 15 years later.   Notwithstanding that, PENN helped to set up gun transactions in the past—in the early 2000s.   *See* Exhibit A (filed under seal); PSR at ¶ 12.   While PENN himself may not have possessed firearms in those instances, his participation in gun trafficking/sales is troubling.   PENN's conduct when approached by law enforcement in 2018 is to his credit, as he promptly admitted his participation in the instant gun transaction.

The defendant is employed, but reportedly "works under the table" for his employer, and has engaged in this arrangement since 2008.   *See* PSR at ¶ 73.   While it is commendable that the defendant has a lengthy work history, "under the table" implies a lack of transparency that may indicate a lack of compliance with federal and state tax obligations—by the defendant and/or his employer.

PENN has a large extended family and is a long-time New Haven resident.   He reportedly has positive relationships with most of his family members including most of his children.   *See* PSR at ¶¶ 48, 52, 55, 57, 58, 61.   PENN seeks a departure pursuant to U.S.S.G. § 5H1.6 based upon his family ties and responsibilities, which are "not ordinarily relevant in determining whether a departure may be warranted."   *See* Def. Memo. at 18.   To consider such a departure, the Court must examine the factors listed in Application Note 1(A) and (B). Among those factors, the Court should consider is the seriousness of the offense.   Participation

9

in a firearms transaction is a serious offense.   The offense involved members of PENN's family, as PENN delivered the firearm to a family member at another family member's home.[3]   PENN, unlike some defendants who come before the Court, does not have minor children who reside with him.   He has adult children, and reportedly fulfills certain caretaking responsibility for certain siblings.   It should be noted that the PSR does not describe the caretaking responsibilities described in letters submitted on his behalf; rather, the PSR indicates that PENN does errands for one sibling three to four times per week and about two times per week for another sibling.   PSR at ¶ 52.   The PSR also indicates that PENN helps his daughter take care of her son (his grandson).   *See* PSR at ¶ 61.   The PSR does not detail any financial support that PENN provides to family members.   As such, it is not clear the extent to which PENN contributes financially to his adult daughter and his grandchildren.   Moreover, his caretaking and running errands for his siblings—while undoubtedly valuable—does not indicate that PENN's family would suffer from the loss of such support in a manner that "substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant."   *See* Application Note 1(B)(ii).   Many defendants who come before this Court are parents, and their children, it is expected may "incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration", which is "of a sort ordinarily incident to incarceration."   *Id*. Moreover, it is not clear that there are "no effective remedial or ameliorative programs reasonably available" that would make whatever financial support he provides "irreplaceable." Application Note 1(B)(iii) to U.S.S.G. § 5H1.6.   Indeed, it would be surprising if members of

---

[3] He delivered the firearm to the home of the first individual identified in the PSR at ¶ 52.   *See* Exhibit A (filed under seal) at ¶ 5.

PENN's close-knit family did not step in to run errands and to arrange for necessary care[4] for PENN's siblings during any period of incarceration.   The Government submits that a departure pursuant to U.S.S.G. § 5H1.6 is not warranted.   As the U.S. Probation Officer observed, "Mr. Penn will potentially miss out on opportunities to spend time with his nine grandchildren and help care for them.   Hopefully he will understand that the decisions to make not only affect him but his family as well."   PSR at ¶ 107.

PENN also seeks a downward departure or variance due to age.   *See* Def. Memo. at 18-19.   The Sentencing Guidelines provide at U.S.S.G. § 5H1.1 that age "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."   That is not the case here.   The defendant is not "elderly and infirm."   While, as he argues, his age may be relevant to his likelihood of recidivating, it is important to note that the defendant was 49 years old at the time he committed this offense.   While PENN's prior criminal history dates from when he was a young adult, it is troubling that he committed the instant offense while a mature adult.

3.   *To Reflect the Seriousness of the Offense and to Promote Respect for the Law*

Possession of a firearm by a felon, even for a short period of time, is a very serious offense.   Participating in an illegal firearms transaction is also very serious conduct.   In fashioning a sentence, the Court should consider the seriousness of the offense.   A sentence should also instill respect for the law—both by the defendant and others.

---

[4] It is also not clear whether any of PENN's siblings qualify for caretaking assistance through Medicaid or other programs.

11

4. *Deterrence*

The Court should consider the need for both specific and general deterrence in fashioning a sentence.   As discussed above, at 53, PENN is older than many defendants who come before this Court having been convicted of a firearm offense—a factor which may suggest a lesser likelihood of recidivism.   However, as noted above, PENN was 49 years old when he committed the instant offense.   Notwithstanding that fact, specific deterrence is likely of lesser concern in this case, particularly because over three and a half years have passed since the commission of the instant offense, and PENN has not had any further legal troubles.   Nevertheless, there is a need for general deterrence—so others with felony convictions who consider possessing a firearm or participating in gun transactions—are discouraged from doing so.

5. *Need to Protect the Public*

While PENN felt safe in his neighborhood growing up, later PENN witnessed and experienced gun violence—as he described seeing friends get shot and having been shot at himself.   *See* PSR at ¶ 50.   PENN's own experiences illustrate the danger of firearms in the hands of the wrong people.   Gun violence has plagued communities including New Haven for decades, posing great risk to the families who make their homes there.   While the need to protect society from further crimes by this defendant may be lesser in this case than in some others, the need to protect the community is closely connected to the need for general deterrence.

III.     **<u>CONCLUSION</u>**

For the reasons set forth above, the Government respectfully submits this memorandum

for the Court's consideration in connection with the sentencing of defendant WILLIE PENN.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


    /s/ *Jennifer R. Laraia*_____
JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct29637
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
(203) 696-3000

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on November 12, 2019, a copy of the foregoing Government's Sentencing Memorandum was filed electronically, and is available to the parties through the Court's CM/ECF system.

 /s/ *Jennifer R. Laraia*
JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY
